EDWARD JOSEPH JONES VS. STATE OF FLORIDA

3 So. (2nd) 388
En Banc
Opinion Filed July 1, 1941

678

*S. E. Durrance,* for Appellant.

*J. Tom Watson,* Attorney General, and *Nathan Cockrell,* Assistant Attorney General, and *O. Raymond Ellars,* County Solicitor, for Appellee.

CHAPMAN, J.—On the 7th day of January, 1941, Edward Joseph Jones was informed against by the County Solicitor of Orange County, Florida, for the violation of Section 1 of Chapter 15603, Acts of 1931, Laws of Florida, in that on the 17th day of November, 1940, in Orange County, Florida, he did unlawfully and wilfully set fire to and burn a dwelling house, the property of Selina Haynes and at the time the same was occupied by Gladys Jones and the defendant below, Edward Joseph Jones. He was placed upon trial in the Criminal Court of Record of Orange County, Florida, and on the 22nd day of January, 1941, was found guilty by a jury as charged in the information and by the trial court sentenced to confinement in the State prison of Florida at hard labor for a period of five years. The appeal here is for the purpose of reviewing the verdict, judgment and proceedings had in the lower court.

It is contended that the information under which the appellant was tried and convicted is fatally defective in that it fails to charge a crime denounced by a statute of Florida. While Section 1 of Chapter 15603 provides that "any person who wilfully and maliciously sets fire to or causes to be burned . . . shall be guilty of arson in the first degree," it is true that the information in this particular case does not employ the identical words appearing in the statute, but charges the defendant "did unlawfully and wilfully" set fire to and burn a dwelling of Selina Haynes

then being used by Gladys Jones and Edward Joseph Jones. But no motion to quash the information was filed, and it is too late now to raise questions of mere technical infirmities in the drafting of the information.

It is not necessary for a decision of the case at bar to consider other statutes applicable to the crime of arson. It is clear that the property charged to have been burned was owned by Selina Haynes and at the time was "used" by Gladys Jones and Edward Joseph Jones. The word "used" employed in the information is substituted for the word "occupied" stated by Section 1 of the Act. The testimony shows that Selina Haynes owned the property and is enumerated in the statute as a dwelling house, and that Gladys Jones and husband, Joseph Edward Jones, were living in it when it was destroyed by fire. This provision of the statute has been considered by the Court. See Love v. State, 107 Fla. 376, 144 So. 843; Hurst v. State, 118 Fla., 877, 160 So. 355; Brown v. State, 126 Fla. 429, 171 So. 211; Duke v. State, 134 Fla. 456, 185 So. 422. An information charging a crime substantially as defined by statute is sufficient. See Finch v. State, 116 Fla. 427, 156 So. 489; Tubb v. Mayo, 128 Fla. 190, 174 So. 325. In drafting indictments and informations the words of the statute should be observed and followed. The substitution of words in drafting an information of synonymous meaning to those appearing in the statute will not render the information fatally defective.

It is contended that the lower court erred in failing or omitting to charge the jury upon the degree of arson charged in the information and established by the testimony. It is suggested that the appellant

can or may be subjected to a second prosecution for the same offense. The information consists of but a single count under Section 1 of Chapter 15603; the wilful and malicious burning or causing to burn or aids, counsel or procures the burning of "any dwelling house, whether occupied or unoccupied or vacant, or any kitchen, shop, barn, stable, or other outhouse that is part thereof . . . shall be guilty of arson in the first degree." The information charges the burning of an occupied dwelling by the defendant . . . and by terms thereof the crime by the terms of the statute is arson in the first degree.

The Legislature employed the terms first, second, third and fourth degree arson in classifying the punishment after conviction. See Section 123, Chapter 19554, Acts of 1939, Laws of Florida, We fail to find error in this assignment.

It is contended that the appellant failed to receive a fair and impartial trial in the lower court because his attorney S. E. Durrance, at the time of the trial was under treatment of a physician for influenza and shortly prior to the time of the trial the attorney had been in a hospital at Orlando for treatment. This contention was a ground of the motion for a new trial. The trial court heard evidence in support of the motion when it was made to appear that attorney Durrance was ill and had been suffering from influenza and left the hospital to try the case. The testimony of a physician of Orlando supported the testimony of attorney Durrance. It is not disputed that Attorney Durrance was indisposed and had been under treatment when the case was called in January, 1941. These facts, in so far as we are advised by the record,

were not made known to the court until after the rendition of the verdict. The trial of cases in a court room requires every ounce of learning, energy, experience, tact, education and resourcefulness of counsel to protect and lawfully assert the legal rights of a client, and out of several years experience in the practice of the law the writer knows that a sick and indisposed attorney is physically incapable of coping with the situation.

It does appear reasonable and just that the trial court should have been apprised of the illness of counsel prior to the trial and given an opportunity to make and enter an order of continuance or postpone the trial date until counsel was physically able to proceed with the trial. But no such opportunity was given the trial court. Counsel points out that he was unable to examine witnesses, check the several decisions, prepare requested instructions, make objections to the introduction of testimony, and discuss the testimony before the jury. These are serious matters that may affect the constitutional rights of people charged with crime when on trial before the court and jury. See Courtney v. Central Trust Co., 112 Fla. 298, 150 So. 276; Ward v. State, 142 Fla. 238, 194 So. 637. The record discloses that counsel was around the court room during the day prior to the trial but went there from the hospital. The trial court reviewed the entire case and in the exercise of his discretion held that the illness of counsel did not affect the legal rights of the appellant during the trial of the case on its merits. There is much in the record to sustain this view, coupled with the lack of due diligence of counsel for not apprising the court of his

illness during the day he was around the court room prior to the trial, but we do not think this proceeding constitutes reversible error.

The record discloses that the State of Florida offered as a witness James Lee and the County Solicitor examined the witness and when counsel for the defendant had the witness on cross examination the County Solicitor interrupted and the following occurred:

"Mr. Ellars (interrupting): If the Court please, Mr. Durrance seems to want to make a joke out of this thing. If he desires to confront the witness with his own testimony that is all right. I don't object to that, but I think his whole conduct is improper and not befitting an attorney at the bar. I think he has tried to make a joke out of justice."

"The Court: Mr. Durrance, come up here. (Thereupon, the Court spoke to Mr. Durrance in an inaudible tone of voice and shortly thereafter the trial was resumed.)"

It is contended that the above remarks as made by the County Solicitor in the presence of the jury during the progress of the trial, coupled with the action of the court thereon in the presence of the jury, were prejudicial, improper and calculated to influence the minds of the jury against the defendant below and were a contributing factor in influencing the jury to render a verdict against the defendant. Careful study has been made of the proceeding in light of the remark made by the County Solicitor when the witness James Lee was on the stand. The record fails to reflect a justification or basis for the remark as made by the County Solicitor. The remark as

made by the County Solicitor resulted in the trial court calling Mr. Durrance from his seat at counsel table to come to the trial court's desk and the court directing certain remarks to Mr. Durrance not disclosed by the record, but the entire proceeding was in the presence of the jury and thereafter Mr. Durrance continued with the cross examination of the State's witness, James Lee.

It is well established that any act which is calculated to embarrass, hinder or obstruct justice, or which is calculated to lessen the authority or dignity of the court is a contempt. See *Ex parte* Crews, 127 Fla. 381, 173 So. 275; Richey v. McLeod, 137 Fla. 281, 188 So. 228; 17 C. J. S. par. 25, 26, 27, 28, pages 33 to 36. In the case of Stewart v. Beggs, 56 Fla. 565, 47 So. 932, suit was instituted to recover attorney's fees and during the progress of the trial of the cause one of the attorneys persisted in following a forbidden line of cross examination of a witness, and the trial court, in the present of jury and during the progress of the trial, entered an order of contempt and imposed a fine in the sum of $25.00 against the attorney and directed the sheriff to collect the fine while the court took a recess for a few minutes. This proceeding was not erroneous and this Court in part said:

"During the progress of the trial the court saw fit, in support of its dignity, to impose a fine of twenty-five dollars upon the plaintiff in error for contempt of court in persisting in a forbidden line of cross-examination and instructed the sheriff to collect the fine during the recess of the court. It is urged that such a rebuke in the presence of the jury was prejudicial, and that the court should have permitted an offered

explanation. While it may be well to have the jury retire when practicable to avoid unduly prejudicing them, yet when a party needlessly and persistently aggravates and exasperates the judge beyond endurance, the consequences should be laid upon his shoulders rather than upon those of the innocent party. The objectionable question was so wholly beyond all legitimate bounds that it could not have been asked in good faith after less objectionable questions along the same line had been repeatedly refused, and we can not give our sanction or encouragement to such methods of conducting a cause in a court of justice. Moreover we are of the opinion that the jury's verdict shows that no prejudice resulted."

We fail to find in the record a justification or basis for the remarks of the County Solicitor, *supra,* or any lawful reason for summoning appellant's counsel from his seat at the trial table to the trial court's desk, as counsel when interrogating on cross examination the witness offered by the State, he was clearly within his lawful right. But we do not think this assignment constitutes reversible error.

The testimony discloses that the appellant and his wife were living in the house at the time it was destroyed by fire. Some difference arose between them, resulting in personal violence, when the wife left her home and went to a nearby residence of a relative. The appellant went there to see his wife and a discussion arose about the return of the wife to the appellant's home. It was then stated by appellant that he intended to burn the dwelling containing the clothes of his wife. The State's case rests

largely upon the testimony of the relatives of the wife of appellant and bad blood existed between the appellant and wife. It is doubtful if a verdict could be sustained without the testimony of the relatives of the wife of the appellant. We must assume on the record that the jury considered and weighed the animus and hostility existing against the appellant by his wife and her relatives. The law does not permit this Court to substitute its judgment for the conclusions of the jury on the testimony. The question for determination by this Court is: Is there sufficient testimony in the record to support the verdict of the jury? and the answer is inescapable.

The judgment of the lower court is hereby affirmed.

BROWN, C. J., WHITFIELD, TERRELL, J. J., concur.

BUFORD, J., concurs in conclusion and judgment.

THOMAS, J., agrees to conclusion.